336 So.2d 1197 (1976)
CAPE PUBLICATIONS, INC. et al., Appellants,
v.
Donald F. ADAMS, Appellee.
CAPE PUBLICATIONS, INC., Appellant,
v.
Donald F. Adams et al., Appellees.
Nos. 74-1731, 74-1760.
District Court of Appeal of Florida, Fourth District.
August 27, 1976.
Rehearing Denied October 1, 1976.
*1198 S. Lindsey Holland, Jr., of Crofton, Holland, Starling, Harris & Severs, P.A., Melbourne, for appellants.
Larry Klein and Cone, Wagner, Nugent, Johnson & McKeown, P.A., West Palm Beach, for appellee-Donald F. Adams.
DOWNEY, Judge.
Appellee (Donald Adams) sued appellants in one count for libel and several other defendants who are not involved in this appeal (Sardella, Stone, and St. Pierre) in a second count for conspiracy to libel. The trial court granted a directed verdict for all the defendants as to the conspiracy count. The jury returned a verdict on the libel count for $114,000 compensatory damages against all the appellants and $100,000 punitive damages solely against appellant, Cape Publications, Inc.
Appellee was the Building Official of the City of Vero Beach, Florida and Indian River County. Appellant Newcome was a reporter and bureau chief for a Brevard County newspaper named Today, which was owned by the predecessor of appellant Cape Publications, Inc. Appellant Buddy Baker was the managing editor of Today. In the course of his employment Newcome wrote several articles about appellee and the conduct of his office. Baker approved the articles, and Cape Publications' predecessor published them. Two of the articles forming the primary basis for the alleged libel essentially charge appellee with: a) soliciting a construction supervisor (Bernard) for a $1000 bribe and attempting to make Bernard return to appellee in cash $150 which appellee had paid by check for three mirrors; and b) attempting to persuade the Mayor of Indian River Shores to pay appellee $2000 (plus $400 for appellee's secretary) annually for work for which appellee had already been compensated. The article involving Bernard set forth that both Bernard and appellee denied either of the reported wrongful acts. But it nevertheless stated that Wilcox, Bernard's supervisor, had told Today that Bernard had in fact reported the two solicitations to Wilcox. The article involving Miller, the Mayor of Indian River Shores, set forth that Miller had stated that appellee had requested the improper payments from him. Miller testified at trial that he had denied the statements attributed to him and had advised Newcome of the true facts by furnishing copies of the town's records or telling Newcome where he could obtain them.
Thus, we have a newspaper and its employees charged with libelling a public official. All parties agree that appellee is a public official and that the rule announced in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), regarding the necessary quality of proof applies in this case. Therefore, in order for appellee to recover it was essential that he prove actual malice on the part of appellants with convincing clarity. "Actual malice" in the New York Times sense means that the material was published with knowledge that it was false or with reckless disregard of whether it was false or not. This court in the recent case of Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976), noted that the New York Times case stated:
"`The constitutional guarantees require, we think, a federal rule that prohibits a *1199 public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"  that is, with knowledge that it was false or with reckless disregard of whether it was false or not.' (376 U.S. at 279-80, 84 S.Ct. at 726)"
Adverting now to the evidence adduced at trial, which we must view in the light most favorable to the verdict,[1] it is our considered opinion after reviewing the entire record, as we must on appeal in a libel case involving a public official,[2] that the proof of actual malice was more than adequate to meet the burden of convincing clarity.
The evidence, in brief, shows the following things. Newcome, St. Pierre, and Sardella were close friends. St. Pierre, a contractor, and appellee had a running feud stemming from appellee's having St. Pierre arrested for violating a stop work order on a construction job. Sardella and Newcome knew this. St. Pierre told Newcome that a contractor named Wilcox had told him and Sardella that appellee had solicited a bribe from Wilcox's supervisor. Newcome talked to Wilcox about this statement and on cross examination Newcome admitted that Wilcox was evasive about the entire matter. Wilcox testified that he had never made such a statement to St. Pierre, Sardella, or Newcome, and that Bernard had never made any such statement to him. Newcome then talked to Bernard, who denied that appellee had solicited a bribe or that he had ever told Wilcox of such an event.
Sardella told Newcome that Wilcox had told him that appellee had purchased three mirrors from Wilcox on a construction site with a $150 check and that later appellee approached Wilcox's supervisor, Bernard, and demanded that the $150 be returned to him in cash. Wilcox denied that Bernard ever told him of this demand and denied he ever made any such statement to Sardella. Newcome contacted Bernard and the latter denied that any such demand had been made or that he had ever so advised Wilcox.
Sardella told Newcome that Miller had stated that appellee asked Miller, the Mayor of Indian River Shores, to personally pay him $2,000 per year and his secretary $400 for work they were doing for Indian River Shores for which work they had already received compensation. Miller denied making any such statement and said he had told Newcome that there had been open discussions between appellee and Miller and the Town Council of Indian River Shores relative to compensation for appellee for the extra work appellee had been doing for the town. Miller either gave Newcome copies of the relevant files or told him where they could be obtained.
Newcome contacted Barclay Henderson, Executive Director of the Florida East Coast Chapter of the General Contractors of America, to see if his organization might take some action against appellee. Newcome met with Henderson and gave him information about appellee. Henderson then conducted an investigation and met with various contractors and appellee. Thereafter, Henderson advised Newcome that he found no basis for any action against appellee and advised Newcome not to print any articles on the matter.
Sardella introduced Newcome to another contractor named DiBassie. During a meeting with DiBassie at which Newcome was present, DiBassie did not accuse appellee of any wrongdoing. He testified at trial that Newcome and Sardella said they were going to get appellee and that they were going to put him in jail.
The jury could properly conclude that every time Newcome went to the sources of the information concerning alleged wrongdoing (Bernard and Miller, the only persons with personal knowledge of the facts), they told Newcome the statements were untrue. This did not happen with just one of the *1200 events but with all three! In addition, Newcome knew his source St. Pierre had a feud going with appellee, so he was on notice as to his questionable credibility. Finally, DiBassie, who, according to Today, accused appellee of improper conduct, denied making any accusation. On the other hand he testified Newcome and Sardella said they were going to get appellee and put him in jail.
In the face of all those red flags flying, Newcome wrote the articles complained of, imputing criminal conduct to appellee. The editorial staff of the newspaper, after giving full consideration to their content and the possible libellous implications arising therefrom, decided to print the articles.
As we view the credible evidence which the jury had before it, there is clear and convincing support for a finding that appellants exhibited a reckless disregard of whether the charges were true or false, i.e., that they published the articles with a high degree of awareness of the probable falsity of the statements involved (Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)) and with serious doubt as to the truth of the publication (St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).
Appellants posed eleven points on appeal. We have given each serious consideration and find that they fail to demonstrate reversible error.
Accordingly, the judgment appealed from in each of these appeals is affirmed.
WALDEN, J., and McCAULEY, JAMES A., Associate Judge, concur.
NOTES
[1] Alioto v. Cowles Communications, Inc., 519 F.2d 777, 780 (9th Cir.1975), cert. denied 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 259; Mahnke v. Northwest Publications, Inc., 280 Minn. 328, 160 N.W.2d 1, 3-4 (1968).
[2] New York Times Co. v. Sullivan, supra.