WILLIAM KUREK *et al.*, Plaintiffs-Appellants, *v.* KAVANAGH, SCULLY, SUDOW, WHITE & FREDERICK *et al.*, Defendants-Appellees.

Third District   No. 76-342

Opinion filed July 22, 1977.

Richard Price and John E. Cassidy, Jr., both of Peoria, for appellants.

Julian Cannell, of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Peoria County granting the defendants' motions to dismiss complaints for malicious prosecution and abuse of process filed by each of the plaintiffs. The litigation, of which this appeal is a part, began in January 1974 when Pleasure Driveway and Park District of Peoria (defendants herein) filed a forcible entry and detainer suit against the five former golf course manager/pro-greenskeepers, William Kurek, Walter Durdle, Robert Togikawa, Edwin Jones and Richard Hoadley (plaintiffs herein). That original suit was the result of unsuccessful concession agreement negotiations between the Peoria Park District and the five former golf course manager/pro-greenskeepers. (*Pleasure Driveway & Park District v. Kurek* (1975), 27 Ill. App. 3d 60, 325 N.E.2d 650.) This court ordered that a writ of restitution issue for execution in favor of the Peoria Park District (hereinafter called Park District) and against the defendants, Kurek, Durdle, Togikawa, Jones and Hoadley (hereinafter called golf pros) for the possession of the golf concession shops situated at five Park District golf courses in Peoria, Illinois.

Then, on July 25, 1975, the Park District filed suit for wrongful holdover against the golf pros. Summary judgment on the issue of liability was granted in favor of the Park District. A bench trial was held on the issue of

damages. On November 14, 1975, the trial court gave judgment to the Park District in the amount of $127,605 plus costs. Notice had been given to counsel for the golf pros that judgment would be entered on that day, but he failed to appear. Collection proceedings were begun on the same day that the judgment was entered and the bank accounts of the golf pros were garnished.

The golf pros asked that the garnishments and writs of execution be quashed because the collection remedies were premature since collection was begun less than 30 days after judgment was rendered. This motion was denied. Citations to discover assets were issued with a hearing date set for November 26, 1975. Defendant Hoadley answered the citation questions; the other four did not and were held in contempt. On November 21, 1976, William Kurek filed a post-trial motion. On December 10, 1976, post-trial motions were filed on behalf of the other four golf pros. The motions were denied on December 12, 1976.

Defendant Hoadley appealed without supersedeas. On January 8, 1976, supersedeas was approved for Kurek, Durdle, Togikawa, and Jones. On January 12, 1976, the four were purged of contempt and the writs of execution, citation proceedings, and garnishments were quashed or dismissed as to them, but not as to Hoadley. This court sustained the validity of the judgments obtained by the Park District and against the golf pros in the case of *Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182.

The complaints which are the cause of this appeal were filed on November 20, 1975, on behalf of William Kurek and on December 22, 1975, on behalf of Walter Durdle, Robert Togikawa, Edwin Jones, and Richard Hoadley. The complaints each alleged that the counsel for the Park District, Kavanagh, Scully, Sudow, White and Frederick; the Pleasure Driveway and Park District of Peoria; and 11 individual Park District board and staff members (hereinafter called Park District) recklessly, wilfully, maliciously, purposefully and intentionally abused process in attempting to collect the judgment. They were charged with doing so in order to economically and financially destroy the golf pros. All five complaints were dismissed for failure to state a cause of action.

Each of the complaints alleged:

> "Execution of the judgment of November 14, 1975, (Group Exhibit B) is, and has been, without probable cause and in violation of section 68.3 of the Civil Practice Act of Illinois (Ill. Rev. Stat., Chap. 110, Sec. 68.3) and Rule 305 of the Rules of the Supreme Court of Illinois (Ill. Rev. Stat., Chap. 110A, Para. 305).
>
> Moreover execution of the foregoing judgment constitutes an abuse of the judicial processes culminating a scheme by the defendants or repetitive abuses of the judicial and governmental

processes for the purpose of economically and financially destroying plaintiff.

Defendants' conduct above complained of is, and has been a reckless, wilfull, malicious, purposeful and intentional abuse of the legal and governmental processes.

As a direct and proximate result of said abuses and wrongful uses of the processes for execution of judgments the plaintiff has sustained substantial compensatory injury and damage and is entitled to punitive damages in an amount no less than that which will visit the economic and financial destruction of each of the defendants as each of them has inflicted and is attempting to inflict, upon the plaintiff."

The golf pros were granted leave to amend their complaints but each elected to stand on his complaint.

The issues presented for review are: (1) do the plaintiffs' complaints state a cause of action for either malicious prosecution or abuse of process; and (2) after a judgment order is entered following a bench trial can collection proceedings be initiated within the 30-day period during which the judgment debtor may elect to file either a post-trial motion or notice of appeal, even though there has been no showing that the judgment creditor's ability to collect the judgment might be impaired by the delay; and (3) does the institution of post-judgment collection proceedings during the said 30-day period effectively destroy a judgment debtor's post-trial remedies and impair his ability to post a supersedeas bond thereby constituting a deprivation of the constitutional right to appeal under section 6 of article VI of the Illinois Constitution of 1970.

The golf pros argue that the language of their complaints states a cause of action for either malicious prosecution or abuse of process. We have carefully reviewed the wording of each complaint. It is a well-established rule that pleadings which state conclusions (*Haas v. Mid-America Fire & Marine Insurance Co.* (1976), 35 Ill. App. 3d 993, 343 N.E.2d 36) and characterize acts (*Atwood Vacuum Machine Co. v. Continental Casualty Co.* (1969), 107 Ill. App. 2d 248, 246 N.E.2d 882) rather than state facts are insufficient at law. While that rule is applicable in this instance, the protracted litigation between the parties makes a discussion of malicious prosecution and abuse of process necessary.

Malicious prosecution and abuse of the process are two separate torts although they are often thought to be the same. Some courts have stated that malicious use of process and malicious prosecution are the same remedy. (*Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 181 N.E.2d 601; *Coplea v. Bybee* (1937), 290 Ill. App. 117, 8 N.E.2d 55.) While that is correct, we believe that it has lead to confusion because many practitioners think that the words use and abuse are synonyms.

■■ The elements of malicious prosecution which must be alleged and proved are the institution of a civil suit by the defendant; the termination of the civil suit in favor of the plaintiff; want of probable cause for the filing of the civil suit; malice on the part of the defendant in filing the civil suit; and special injury to the plaintiff as a result of the civil suit. *Franklin v. Grossinger Motor Sales, Inc.* (1970), 122 Ill. App. 2d 391, 259 N.E.2d 307; *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d 285.

■■ Termination of the civil suit in favor of the plaintiff must be a judicial determination which deals with the factual issues. Voluntary dismissal (*Bonney v. King* (1903), 201 Ill. 47, 66 N.E. 377), settlement (*Schwartz v. Schwartz* (1937), 366 Ill. 247, 8 N.E.2d 668), or even involuntary dismissal (*Siegel v. City of Chicago* (1970), 127 Ill. App. 2d 84, 261 N.E.2d 802) are not such terminations.

Special injury requires some interference with plaintiff or his property greater than the ordinary inconvenience one may be expected to suffer as the result of litigation. *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d 285; *Siegel v. City of Chicago* (1970), 127 Ill. App. 2d 84, 261 N.E.2d 802.

■■ The elements of abuse of process which must be alleged and proved are an ulterior purpose for the use of regular court process and an act in the use of the regular process which is not proper in the regular prosecution of the lawsuit. (*Alberto-Culver Co. v. Andrea Dumon, Inc.* (N.D. Ill. 1969), 295 F. Supp. 1155.) The purpose of such an action is to accomplish some result which could not be accomplished through the suit itself. (*Barrett v. Baylor* (7th Cir. 1972), 457 F. 2d 119; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 181 N.E.2d 601.) This must be something other than the successful completion of that particular lawsuit. (*Ewert v. Wieboldt Stores, Inc.* (1976), 38 Ill. App. 3d 42, 347 N.E.2d 242.) The mere filing of a lawsuit, even with a malicious motive, does not constitute an abuse of process. *Holiday Magic, Inc. v. Scott* (1972), 4 Ill. App. 3d 962, 282 N.E.2d 452; *Ewert v. Wieboldt Stores, Inc.* (1976), 38 Ill. App. 3d 42, 347 N.E.2d 242; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 181 N.E.2d 601.

■■ In addition, the two actions can be distinguished in that malicious prosecution requires the termination of the prior suit in favor of the plaintiff in the malicious prosecution action, while abuse of process does not require such termination. *Holiday Magic, Inc. v. Scott* (1972), 4 Ill. App. 3d 962, 282 N.E.2d 452.

■■ It appears that the golf pros have complained that the garnishment proceedings constitute malicious prosecution or abuse of process. Wrongful garnishment can be the basis of a malicious prosecution suit (*Foley Brokerage Co. v. Feldman Bros. Com., Inc.* (1947), 330 Ill. App. 372, 71 N.E.2d 354), but all the elements of malicious

prosecution must still be alleged in order for a complaint to state a cause of action. Here the golf pros merely allege that execution of the judgment was without probable cause; that it was for the purpose of economically destroying the golf pros; that it was reckless, wilfull, malicious, purposeful and intentional; and that the golf pros sustained substantial compensatory injury. There is no allegation that the garnishment proceedings terminated in favor of the golf pros, nor is there an allegation of special injury. We shall not comment on the sufficiency of the other allegations.

The golf pros remind the court that all well-pleaded facts must be accepted as true in determining the sufficiency of a complaint for purposes of a motion to dismiss. Then, however, the golf pros suggest that in addition to the facts which are contained in the complaint, one who wishes to sustain his pleading may, on appeal, add more facts to those pleaded and thereby state a cause of action. With this theory the golf pros argue that there was a judicial determination of the factual issues here when the trial court quashed or dismissed the writs of execution, citation proceedings, and garnishments as to Kurek, Durdle, Togikawa, and Jones after they had filed supersedeas bonds. Since Hoadley did not file a supersedeas bond, there was no termination of the collection proceedings against him. Therefore, as a matter of law his complaint fails to state a cause of action for malicious prosecution.

■■ When the golf pros elected to stand on their complaints, they became bound by the wording of the complaints. They waived their right to amend. Therefore we are unable to consider matters which are not contained in the pleadings themselves. *Board of Education v. City of Chicago* (1949), 402 Ill. 291, 83 N.E.2d 714; *Hill v. Frost* (1960), 27 Ill. App. 2d 313, 169 N.E.2d 691.

■■ Nevertheless, we think it important to comment further. We find that the dismissal of collection proceedings after the supersedeas bond has been presented, approved and filed is not a judicial determination of the factual issues. It is, in effect, a stay of the proceedings but it does not affect the validity of the judgment which may be enforced if it is affirmed. (*Nemanich v. Long Grove Country Club Estates, Inc.* (1970), 119 Ill. App. 2d 169, 255 N.E.2d 466.) Therefore, it cannot be considered a termination in favor of the plaintiff. The golf pros have not, therefore, stated a cause of action for malicious prosecution.

The golf pros also argue that their complaints allege that the garnishment was an abuse of process. While this is a conclusion, we again feel it necessary to comment further. They also argue that the complaints allege that the purpose is to economically destroy the golf pros. They say the garnishment was an abusive act because it occurred within 30 days of the judgment and before post-trial motions were filed. Therefore, in order

to determine whether an abuse has occurred, we must determine whether the 30-day period constitutes a mandatory waiting period.

Supreme Court Rule 305 states:

> "(1) An appeal stays the enforcement of a judgment for money only if a notice of appeal is filed within 30 days after the entry of the judgment appealed from and a bond in a reasonable amount to secure the appellee is presented, approved, and filed within the same 30 days or within any extension of time granted under subparagraph (2) of this paragraph. Notice of the presentment of the bond shall be given to the appellee." (Ill. Rev. Stat. 1975, ch. 110A, par. 305.)

The Civil Practice Act, section 68.3, states:

> "(1) In all cases tried without a jury, any party may, within 30 days after the entry of the decree or judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the decree or judgment or to vacate the decree or judgment or for other relief.
>
> (2) A motion filed in apt time stays execution." Ill. Rev. Stat., 1975, ch. 110, par. 68.3(1)(2).

■■ We view the right to appeal, the right to file post-trial motions and the right to file a supersedeas bond as separate rights. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208.) We do not believe that the right to appeal a court order is dependent upon the posting of a supersedeas bond. Even though appellants are unable to post a sufficient supersedeas bond, they may appeal. How soon the appellant must post that bond depends upon Supreme Court Rule.

■■ ■ The purpose of the supersedeas bond is to stay execution during the pendency of the appeal. We do not think Supreme Court Rule 305 gives an automatic 30-day stay of execution until a supersedeas bond is posted or until the time to appeal has expired. If such a rule did exist, it would be applicable in all cases. Then it would be possible for unscrupulous judgment debtors to secret their assets and defeat the rights of a judgment creditor and defy the court's order. That is not a situation we could permit to exist. Therefore, we find that collection proceedings may be started at any time after judgment and prior to the filing of a supersedeas bond.

■■ Similarly, a post-trial motion filed in apt time will stay execution. Apt time here is the time permitted by section 68.3 of the Civil Practice Act. It is the filing of the post-trial motion which stays execution; there is no stay unless a post-trial motion is filed in apt time.

The golf pros argue that the judgment was not so final as to permit immediate execution. Three cases are cited as authority for this argument.

The first is *School Directors v. Newman* (1892), 47 Ill. App. 364, in which an employee alleged that he was wrongfully discharged from his job and was entitled to the balance of his salary due under his employment contract. The jury gave a verdict for "_____ dollars" and a judgment for "_____ dollars" was entered upon the record. The appellate court found that this was not a final judgment because it was not "* * * the ultimate fixed and precise determination of the judicial proceeding in which it is entered." The judgment there did not lack finality because it was appealed; it lacked finality because it was not a judgment. The jury had, in effect, failed to reach a decision.

In *Wallace Grain & Supply Co. v. Cary* (1940), 374 Ill. 57, 28 N.E.2d 107, a verdict was rendered for $817.33 on January 24, 1934. On February 9, 1939, the plaintiff moved for a judgment on the verdict. The defendant argued that the court no longer had jurisdiction over him because of the lapse of time. The Illinois Supreme Court said that until all matters in a controversy are finally determined, the cause is still pending and the court retains jurisdiction. It appears that the golf pros are arguing that as long as an appeal is possible there are matters in controversy; there is no final judgment; and, therefore, attempts to collect such a non-final judgment are an abuse of process. We cannot agree.

In *Roberts v. Central Mutual Insurance Co.* (1936), 285 Ill. App. 408, 2 N.E.2d 132, the plaintiff argued that a final judgment is one from which an appeal would lie. The court found that final judgment was one which was no longer subject to change or review. However, we find it persuasive that in *Roberts* that suit to collect on the judgment was filed after the appeal had been docketed. In the instant case, collection proceedings were begun before the appeal was docketed or notice of the appeal given.

■■ We believe that a judgment creditor is not obligated to refrain from collection of his judgment for a 30-day period in order to give the judgment debtor time to decide whether he wishes to appeal. If every judgment creditor was required to wait 30 days before beginning collection proceedings, no judgment creditor could be certain of collection. We find no requirement that a judgment creditor show that his ability to collect will be impaired before he may begin such proceedings.

The golf pros have argued that the purpose behind the immediate execution of the judgment was to require the golf pros to do what they would not ordinarily be required to do. They argue in their brief that, "Although not explicitly denominated as such, the actions alleged below were designed to coerce a settlement and under duress to force abandonment of the right to appeal under article VI, section 6 of the Illinois Constitution of 1970." The record shows that summary judgment on the issue of liability was entered and a bench trial on the issue of

damages set. The evidence was closed on October 2, 1975, and the parties were directed to file trial briefs. The golf pros failed to file trial briefs. The trial judge prepared a memorandum of decision finding the issues for the Park District. This memorandum was made available to the parties prior to November 14, 1975. The attorney for the golf pros was advised by the attorney for the Park District that he would appear on November 14, 1975, and asked that a judgment order be entered. The attorney for the golf pros did not appear. There was a lapse of time between the issuance of the memorandum and the entry of the judgment order, but the attorney for the golf pros took no action either to have the judgment entered himself and then file his post-trial motions or to appear at the entry of the judgment and file his post-trial motions. As we understand his tactics, he planned to file each post-trial motion at a different time, with the last motion to be filed on the 30th day. The Park District, anticipating such a tactic, moved for execution of the judgment.

We must emphasize that while section 68.3 specifies that the timely filing of a motion after judgment in a nonjury case stays execution, it does not provide for a stay when no motion is filed. In the instant case, execution was begun before the motion was filed, therefore there was no stay until such time as the post-trial motion was filed.

■■■■ We have held that the right to appeal and the right to file a supersedeas bond are separate rights. The right to appeal is not dependent upon the filing of the bond. Therefore, an execution which takes the funds of a judgment creditor who might otherwise use those funds to pose a supersedeas bond is not denial of his right to appeal. It is a regular use of process to obtain a legitimate purpose—the collection of a money judgment. If the proceedings are begun to collect a judgment which has been validly obtained, there is no abuse of process. Therefore, we hold that the golf pros' complaints do not state causes of action.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.

STENGEL, P. J., and STOUDER, J., concur.